**WAYNE R. JOHNSON, ESQ.** (State Bar No. 181937)
Email: wrj@wrjassoc.com
**SHUKA RASSOULI, ESQ.** (State Bar No. 266829)
Email: sr@wrjassoc.com
**WAYNE R. JOHNSON & ASSOCIATES, PLC**
9595 Wilshire Blvd. Ste 900
Beverly Hills, CA 90212
Telephone:     (310) 693-6949
Facsimile:     (323) 417-4791

*Attorneys for Plaintiff Michael A. Baker, Executor*

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. BAKER, Executor of the Estate of Chantal Burnison, Deceased <br><br> Plaintiff <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant | *Civil Action* <br><br> COMPLAINT FOR JUDICIAL REVIEW AND ABATEMENT OF JEOPARDY ASSESSMENT AND JEOPARDY LEVY MADE PURSUANT TO 26 U.S.C. § 7429 <br><br> *Expedited Time Limits Apply by Statute —* See 26 U.S.C. § 7429(b)(3) |

## **COMPLAINT**

Plaintiff MICHAEL A. BAKER, Executor of the Estate of Chantal Burnison, Deceased (the "Estate"), by and through his attorneys, alleges and states as follows in his Complaint against Defendant United States of America:

## **NATURE OF THE ACTION**

1.     Pursuant to § 7429(b), of 26 U.S. Code (the Internal Revenue Code; hereinafter "IRC"), Plaintiff brings this civil action against the United States of

America seeking a determination that jeopardy assessments and jeopardy levies made by the Internal Revenue Service ("IRS") on or about July 26, 2022, and July 27, 2022, respectively, are not reasonable under the circumstances and, *inter alia*, must be abated and released in their entirety.

2.     IRC § 7429(b)(3) states in relevant part: "Within 20 days after a proceeding is commenced . . . the court shall determine — (A) whether or not — (i) the making of the assessment . . . is reasonable under the circumstances . . ." and "(B) whether or not the levy . . . is reasonable under the circumstances. . . ."[1]

3.     Defendant bears the burden to prove IRS acted reasonably in making the jeopardy assessments and issuing jeopardy levies. *See* 26 U.S.C. § 7429(g)(1).[2]

4.     IRC § 6861(a) allows IRS to make an immediate assessment of a tax liability "[i]f the [Treasury] Secretary believes that the assessment or collection of a deficiency . . . will be jeopardized by delay."

5.     IRC § 6331(a) provides that IRS may commence tax collection by levy "[i]f the [Treasury] Secretary makes a finding that the collection of such tax is in jeopardy."

6.     On July 26, 2022, IRS issued a Notice of Jeopardy Assessment and Rights to Appeal to Plaintiff concerning the personal income tax returns Chantal Burnison (hereafter referred to as the "Decedent") filed with IRS for tax years 2011, 2013, 2014 and 2016, inclusive (the "Decedent Jeopardy Assessment"). The Decedent Jeopardy Assessment notice alleges Decedent owes additional income tax, interest, and penalties for each of taxable years 2011, 2013, 2014 and 2016.

---

[1]     IRC § 7429(c) provides that an extension of this 20-day period may be granted for up to 40 additional days, based solely on the request of the taxpayer upon a showing of reasonable grounds.

[2]     The issue of whether Plaintiff owes additional taxes is not before this Court for determination in this case. IRC § 6861(b) requires IRS to issue a notice of deficiency setting out the asserted tax liability within 60 days of making a jeopardy assessment, which accords the taxpayer an opportunity to challenge the underlying tax liability by filing a petition in the United States Tax Court within 90 days. IRS issued a notice of deficiency to each of Ms. Burnison and the Estate on September 22, 2022. Plaintiff plans to timely file a petition with the Tax Court.

7.   IRS set out its purported basis for making the Jeopardy Assessment against Decedent in the Jeopardy Recommendation Report that accompanied the Decedent Jeopardy Assessment (the "Decedent Jeopardy Report").

8.   Also on July 26, 2022, IRS issued a Notice of Jeopardy Assessment and Rights to Appeal to Plaintiff alleging the Estate owed additional income tax, interest, and penalties for taxable years 2017 and 2018, inclusive (the "Estate Jeopardy Assessment", which, together with the Decedent Jeopardy Assessment may be collectively referred to as the "Jeopardy Assessments").

9.   IRS set out its purported basis for making the Jeopardy Assessment against the Estate in the Jeopardy Recommendation Report that accompanied the Estate Jeopardy Assessment (the "Estate Jeopardy Report", which together with the Decedent Jeopardy Report may be collectively referred to as the "Jeopardy Reports").

10.   On July 27, 2022, IRS issued a Notice of Jeopardy Levy and Right of Appeal for collection of the alleged liability set forth in the Jeopardy Assessments to Plaintiff (the "Jeopardy Levy").

11.   The IRC and Treasury Regulations accord taxpayers the right to an examination by IRS, *see* Treas. Reg. § 601.105(b)(4); an administrative review by IRS Independent Office of Appeals ("IRS Appeals"), *see* Treas. Reg. § 601.106(b); and an opportunity to petition the United States Tax Court before an assessment of tax liability may be made, *see* IRC § 6213. The IRC and Treasury Regulations similarly accord taxpayers certain rights of review before IRS may begin collection of an assessed tax. *See* 26 U.S.C. §§ 6320, 6330.

12.   IRC §§ 6861(a) (jeopardy assessment) and 6331(a) (jeopardy levy) allow IRS to circumvent those statutory rights and procedures under narrowly defined and extraordinary circumstances.

13.   Treasury Regulation § 301.6861-1(a) limits the basis on which IRS may make a jeopardy assessment to the following conditions:

(i)    The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself;

(ii)    The taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons; or

(iii)    The taxpayer's financial solvency is or appears to be imperiled. Treas. Reg. § 301.6861-1(a) (incorporating by cross-reference the three conditions set forth in Treas. Reg. § 1.6851-1(a)(1)).

14.    In the Jeopardy Reports, which are virtually identical to one another, IRS relied solely on the second condition set out in Treasury Regulation § 1.6851-1(a)(1)(ii), contending the Decedent in the past had acted, and Plaintiff is currently acting, to conceal their assets and activities, and dissipate assets to place them beyond Defendant's reach. The narrative reports contained in the Jeopardy Reports do not support these contentions. In fact, IRS, without having taken time to understand either the facts and circumstances surrounding the Decedent's business activities or the Estate's current activities, made unsupportable findings of fact. To compound that failure, IRS now seeks to apply its flawed understanding of Decedent's activities against the Estate, in a gross attempt to cast Plaintiff as engaging in misconduct. Plaintiff has done nothing of the sort.

15.    IRS makes no allegation that Mr. Baker is designing quickly to depart from the United States or conceal himself. In fact, given Mr. Baker's extensive personal and business connections to the Los Angeles area, there is no set of facts that could be presented to prove such is the case.

16.    IRS makes the following contentions in support of the Jeopardy Assessments:

"... Ms. Burnison *had* utilized a foreign person and companies to conceal her activities and her estate continued the concealment and failed

to report the income generated on Ms. Burnison and her estate's income tax returns.

Ms. Burnisons [*sic*] and her estate's actions have led [IRS] to conclude that Ms. Burnison and/or her estate are or appears [*sic*] to be attempting to not only conceal their activities and assets, but Ms. Burnison and/or her estate are also attempting to dissipate the last know asset thereby tending to prejudice or render ineffective collection of income tax."

Decedent Jeopardy Assessment Report, Narrative – Explanation of Assessment, page 8. (*Emphasis added*)

17.    Nearly five years after Decedent died, the Singapore International Commercial Court ("SICC") determined she was the rightful owner of certain assets then in possession of a foreign national.

18.    IRS has used the Singapore case record to craft a theory of the case suggesting that collection is jeopardized simply because Decedent owned unreported foreign assets during her lifetime. IRS provides no evidence to suggest Decedent knew she had an obligation to report these assets and, based upon income tax laws existing at the time of and prior to her death, or that she was required to pay tax on income generated by any foreign controlled corporation. A major flaw in IRS's theory of liability is that it ignores the very real possibility that some or all of the income derived by the foreign entities, particularly Renslade HK, was not includible subpart F income in the years received. Because of its rush to judgment, IRS made no effort to understand income streams or the includability of such income under subpart F of the Internal Revenue Code.

19.    As for contentions made against Mr. Baker, personally, IRS could not be more wrong. Since being appointed executor of Decedent's will and estate on February 2, 2018, in addition to administering the Estate, Mr. Baker, as executor, has, among other things: brought suit against foreign persons in foreign courts

(SICC) to establish the rights, if any, Decedent had in the Ethocyn Rights and other related assets; defended against several appeals those same foreign persons filed in opposition to the SICC's judgments; defended against retaliatory lawsuits Weber and his affiliates brought against the Estate in U.S. District Court; sued Decedent's foreign attorneys in this Court, claiming, *inter alia*, said attorneys defrauded Decedent during her lifetime and breached the fiduciary duties they owed her by working with the foreign persons to hide the fact Decedent owned the foreign assets.

20.     IRS bases the Jeopardy Assessments on the following allegations, none of which support its actions:

        (a)     *Actions Establishing Plaintiff's Efforts to Place Property Outside the Defendant's Reach –*

            i.     in 2000, Decedent entered into an agreement with a Swiss national named, Marcus Weber ("Weber"), to form a Hong Kong corporation known as Renslade Holdings Limited ("Renslade HK"). Under the agreement, Decedent would cause certain intellectual properties referred to as Ethocyn Rights, and all rights associated therein, (collectively, the "Ethocyn Rights") to be transferred to Renslade HK. Weber was the sole shareholder of Renslade HK. Following Decedent's death, Mr. Baker made a demand that Weber transfer to him, as executor of the Estate, both the Ethocyn Rights and all profits that Renslade HK derived but did not pay over to Decedent from its exploitation of the Ethocyn Rights. Weber refused, claiming that he purchased the Ethocyn Rights from a U.S. Bankruptcy Court in 2000 and, accordingly, he was the sole owner of the Ethocyn Rights and related profits. (The ownership dispute

resulted in Plaintiff initiating litigation against Weber and others in the Singapore International Commercial Court);

 ii. Decedent owned or was in control of a Singapore corporation named BCS Business Consulting Services Pte. Ltd. ("BCS Singapore"). Decedent owned no interest in BCS Singapore, had no rights that, upon exercise, would have allowed her to become an equity holder in BCS Singapore, and had no ability to control the activities of BCS Singapore;

 iii. Decedent failed to report income BCS Singapore generated from sale of Ethocyn products to a U.S. corporation named Nu Skin (neither Decedent nor Renslade HK were parties to the Nu Skin contract. BCS Singapore was required to report and pay U.S. taxes on its Nu Skin sales. IRS has provided nothing to suggest it did not);

 iv. BCS Pharma Corporation ("BCS Pharma"), a California corporation, received payments from BCS Singapore between 2009 and the time of Decedent's death (BCS Pharma received payments for product manufacturing and fulfillment services it performed for BCS Singapore during the years in question);

 (b) *Factors Evidencing Plaintiff's Efforts to Conceal Assets* –

 i. In 1996 Decedent's father, Eugene Burnison, established the Chantal Burnison Trust (the "Trust") for the benefit of Decedent and her two minor children. Decedent was not a grantor or settlor of the Trust. The Trust's only

- 7 -

material asset from the time of its establishment was a residence located at 750 Sarbonne Road, Los Angeles, CA 90077 (the "Sarbonne property"), in which Decedent and her children resided. Decedent never served as a trustee of the Trust and had no rights to amend, modify, alter or terminate the Trust or any provision contained therein;

ii.    Revenue Agent, June Pham, claims she asked Mr. Baker to provide her with the EIN assigned to the Estate. Ms. Pham alleges Mr. Baker gave her the Trust's EIN, rather than the Estate's EIN. Even if this error was made, Plaintiff fails to see how a mistake like this could possibly suggest concealment on the part of either the executor or any Plaintiff. Frankly speaking, it does not. This is just another red herring being laid out to support the Defendant's unsupportable position; and

iii.    Mr. Baker allegedly failed to provide Ms. Pham with a clear understanding as to the procedural posture of the Singapore litigation, which is complex litigation involving numerous actions in numerous venues and courts throughout the world.

(c)    Facts Evidencing Attempts to Dissipate Assets –

i.    the Estate's sale of a residence it owned at 28025 South Peninsula Drive, Lake Arrowhead, CA 92352 (the "Arrowhead Home"). The Arrowhead Home was, as reported on Form 706, owned by a California LLC named "Katja Holm, LLC, which, in turn, is wholly-owned by the Estate; and

ii.     The Trust's efforts to sell the Sarbonne property.

**PARTIES**

21.     Plaintiff Michael A. Baker, Executor of the Estate of Chantal Burton ("Plaintiff") is the Court-appointed Executor of the estate of Chantal Burnison, Deceased, duly appointed by the Los Angeles Probate Court on January 18, 2018 in Los Angeles County Superior Court Case No. 17STPB09489.   The place of estate administration is located at 17707 S. Santa Fe Avenue, Compton, California 90221 where Plaintiff resides. Plaintiff brings this matter in his fiduciary capacity as the Executor of the Estate of Chantal Burnison.

22.     Defendant is the United States of America.

23.     IRS is an agency within the executive branch of Defendant and, at all times relevant to this Complaint, has had sole and exclusive authority for collecting revenue on behalf of the United States of America.

**JURISDICTION**

24.     Plaintiff has exhausted all administrative remedies. Accordingly, this Court has jurisdiction over this matter pursuant to IRC § 7429(b)(2)(A) and 28 U.S.C. § 1346(e).

25.     Pursuant to IRC § 7429(b), a taxpayer can seek judicial review in the United States District Court within ninety (90) days of the earlier of (1) the day the Secretary of the Treasury notifies the taxpayer of her determination of the administrative appeal or (2) the sixteenth (16) day after which such a request for administrative review by IRS Appeals was made. See 26 U.S.C. § 7429(b)(1).

26.     On August 25, Plaintiff, through his attorneys, timely and separately requested administrative review of the Jeopardy Assessments pursuant to IRC § 7429(a)(2).

27.     Administrative hearings were held before IRS Appeals on September

28, 2022 and October 5, 2022, solely concerning the Jeopardy Assessments. IRS Appeals issued a determination letter on October 20, 2022, notifying Plaintiff it was denying his appeals.

28.    With respect to the Jeopardy Levy, on August 26, 2022, Plaintiff filed a Request for Collection Due Process Hearing with the IRS Appeals Division seeking administrative review of the Jeopardy Levy IRS issued to Plaintiff on July 27, 2022. An initial administrative hearing was finally held before Appeals on December 7, 2022, approximately three and one-half months after the CDP request was made. Prior to the December 7, 2022 hearing, neither Plaintiff nor his attorneys received any correspondence from Appeals; notwithstanding that fact, IRS has waged an aggressive collection campaign against Plaintiff, which has included levying against property belonging to Plaintiff, as well as seizing Estate assets held by certain third parties (i.e., bank and brokerage accounts).

29.    Although the IRM instructs IRS to, in the case of tax obligations of decedents, file a claim with the Probate Court, even in the case of jeopardy assessments, Defendant has refused to do so, despite numerous requests having been made by Plaintiff that Defendant do so.

30.    This Complaint for judicial review of the Jeopardy Assessments and Jeopardy Levy is timely filed in this Court.

## VENUE

31.    Venue is appropriate in this Court pursuant to IRC § 7429(e) and 28 U.S.C. § 1402(a)(1) because at all times relevant to this matter, Decedent lawfully resided in and Plaintiff currently resides in this district.

///

///

///

///

## **FACTUAL BACKGROUND**

32.     Pursuant to the Decedent Jeopardy Assessment, IRS assessed $56,481,436.95, inclusive of income tax, penalties, and interest, against Plaintiff for taxable years 2011, 2013, 2014 and 2016, inclusive.

33.     Pursuant to the Estate Jeopardy Assessment, IRS assessed $4,982,948.00, inclusive of income tax, penalties, and interest, against the Estate for taxable years 2017 and 2018, inclusive

34.     In the Decedent Jeopardy Report, IRS alleged that Decedent failed to report income that was earned from sale of Ethocyn Products to Nu Skin during the years in question.

35.     In the Estate Jeopardy Report, IRS alleged the Estate failed to report income that was earned from the sale of Ethocyn Products to Nu Skin during tax years 2017 and 2018.

36.     Neither Decedent nor the Estate are or have ever been parties to the contract(s) existing between BCS Singapore and Nu Skin. For that reason, neither Decedent nor the Estate has *ever* "sold" Ethocyn products to Nu Skin.

37.     Plaintiff denies either Decedent or the Estate underreported income during any of the tax years in question, and contends IRS was only able to make this claim because it failed to properly investigate and understand the nature of the business dealings and relationships in this case. Neither Decedent nor the Estate is or has ever been a party to the Nu Skin agreement. Consequently, no part of the income generated from BCS Singapore's sale of Ethocyn products to Nu Skin could or can be attributed to either Decedent or Plaintiff during any of the tax years at issue.

38.     Although Mr. Baker splits his time between Los Angeles County and his home in Mexico, IRS does not and cannot contend that Mr. Baker is designing quickly to depart the United States or to conceal himself. Mr. Baker considers himself a resident of Los Angeles County and the State of California. In addition,

- 11 -

Mr. Baker has deep roots, both personal and professional, in the district. His business is located in Los Angeles, County; he is employed as CFO and general counsel of a successful business located in Compton, California (he owns no equity interest in his employer); some of his children live in the district; Mr. Baker earned a bachelor's degree from the University of Southern California in the early 1970s and subsequently earned a juris doctorate from Southwestern School of Law in or about 1975. Mr. Baker became a member of the California State Bar in December 1975. Mr. Baker has been an instructor of international business at UCLA since 1989.

39.    IRS does not and cannot contend that the Estate's financial solvency is imperiled. No significant creditor claims have been made to date in the probate currently pending of and for the Estate. Moreover, despite numerous requests made by Mr. Baker, IRS refuses to file a creditor's claim with the Probate Court concerning the amounts of income tax, interest, and penalties it assessed on jeopardy basis against Plaintiff.

40.    Treasury Regulation § 1.6851-1(a) requires that, in the context of a jeopardy assessment, a determination of solvency be made without regard to the tax liability at issue in the proposed assessment. Except for the jeopardy assessments in question, the Estate has virtually no debts other than fees and costs associated with probate of the Estate.

41.    The Internal Revenue Manual requires that a taxpayer's financial solvency "must be threatened . . . or there can be no jeopardy." I.R.M. 5.17.15.2.1(3) (emphasis added). There are no facts to suggest that the Estate's financial solvency is imperiled: the Estate has no open balance due accounts, no outstanding judgments, and has never filed for bankruptcy. See I.R.M. 5.17.15.2.1(3) and I.R.M. 4.15.1.9.1.3. In fact, the only threat to the Estate's solvency in this case exists as a result of the aggressive collection tactics IRS has used since announcing the jeopardy assessments. For reasons detailed in ¶ 44,

below, Plaintiff is relying on assets it recovered through the Singapore litigation to secure the award made to it. Without sufficient resources, Plaintiff's ability to defend against existing claims and appeals brought by the Singapore defendants will be compromised.

42.     Plaintiff is not "Designing Quickly" to place assets beyond the Defendant's reach. In fact, the contrary is true. Since becoming executor of the Estate, Mr. Baker has spent virtually all of his time pursuing recovery of offshore assets he believed to be owned by Decedent, but in the wrongful possession of third parties (i.e., Weber). Through those efforts, Mr. Baker has obtained judgments and recovered, after payment of litigation costs and attorney's fees, about $25,000,000, all of which has been reported to the Probate Court before which the Estate is being administered. The bulk of the recovered assets have been repatriated to the United States and placed on account, in the name of, and under the EIN assigned to, the Estate. All funds are on deposit with major U.S. banks. The entirety of these assets is subject to the probate proceedings currently pending before the Probate Division of the Los Angeles County Superior Court and cannot be paid over or distributed to any person without a final Order of Distribution issued by the Probate Court.

43.     Plaintiff placed IRS on notice of the Singapore litigation and the basis of the claims made when the estate filed Form 706 with IRS on January 2, 2018. At that time, Plaintiff informed IRS that the Estate had initiated litigation in the SICC, identified the nature of the claims, identified the defendants against which the claims were made and provided IRS with the SICC case number so that it could readily obtain information about the case as desired. In fact, IRS ultimately used the information provided with Form 706 to learn more about the Singapore litigation. Clearly there was no effort on Plaintiff's part to conceal the Singapore litigation from the Defendant. The record proves Plaintiff acted transparently in regard to the Singapore litigation.

///

COMPLAINT FOR JUDICIAL REVIEW AND ABATEMENT OF JEOPARDY ASSESSMENT AND JEOPARDY LEVY MADE PURSUANT TO 26 U.S.C. § 7429

44.     Despite prevailing at trial, and on numerous appeals by the Singapore defendants, the litigation with Weber and his affiliates is not yet concluded. The Singapore defendants continue to, in Plaintiff's opinion, vexatiously press their claims and defenses in Singapore and have now opened a new front in the United States by suing the Plaintiff in this Court. As a result of the ongoing litigation and challenges, it remains possible, though improbable, that the Singapore defendants might find a way to claw back some of the assets Plaintiff recovered from them. Recognizing this reality, a portion of the recovered assets remains held by the Estate's Singapore counsel as a "war chest" if you will. Despite the fact the war chest funds are located outside the United States, the existence of these assets has been made known to the Probate Court and such assets are subject to the probate proceedings currently pending before the Probate Court.

45.     Because all assets of the Estate are subject to probate under California law, Mr. Baker, as executor of the Estate and Will is legally prohibited from making any transfer or distribution of the assets without approval of the Probate Court. To do otherwise would be a breach of Mr. Baker's fiduciary duties and a violation of California law.

46.     Concerning the Sarbonne property, the inclusion of this asset in this discussion is completely inappropriate. IRS has offered nothing to suggest the Trust is in any way owned by either the Estate or Decedent. In fact, the record is clear the Sarbonne property is owned by the Trust and has been since 1996, approximately 20 years before Decedent's death, and at least fifteen years prior to the earliest taxable year at issue in this case.

47.     Decedent's father, Eugene Burnison, (the "Trust Settlor"), purchased the Sarbonne property from Decedent and her then husband at or about the time they were divorcing from one another. There are no facts to suggest Mr. Burnison purchased the property for the account of anyone other than himself, nor are there any facts to suggest he paid anything other than full and adequate consideration for

the Sarbonne property – and, given the fact Decedent was in the midst of divorcing her husband, it is hard to imagine the transaction having been anything but transparent as to all parties. Public records indicate Mr. Burnison purchase the Sarbonne property approximately one-year before he formed the Trust.

48.     At the time he established the Trust, April 6, 1996, the Trust Settlor transferred title to the Sarbonne property from himself to Raymond J. Fisher, as trustee of the Trust. Decedent had no relationship whatsoever with Mr. Fisher and had no ability to control him or dictate his actions. Mr. Fisher was completely independent of Decedent. Trust Settlor established the Trust for the benefit of Decedent and her two daughters. The gift was openly and notoriously made, and the public record supports the factual presentation made in this paragraph. It is only because of the zeal with which IRS has pursued collection in this case that the Defendant finds itself unable to review and accurately interpret the facts surrounding the Trust and the Sarbonne property. IRS' effort to treat the Trust and Sarbonne property as part of the Estate is preposterous. Moreover, pointing to the formation of a trust formed nearly 30 years ago by someone other than the Plaintiff stretches credulity. The Trust is not now, nor has it ever been, an asset of the Decedent or Plaintiff. Moreover, the Trust was formed approximately five years before Renslade HK was even formed, and approximately fifteen years before BCS Singapore first sold Ethocyn products to Nu Skin. For these reasons neither the Trust nor the Sarbonne property has any relevance to this case and IRS' effort to use either the Sarbonne property or the Trust's existence in support of its jeopardy assessment decision must be ignored entirely.

49.     Concerning the Arrowhead Home, the Estate reported that property on the Form 706 it filed with IRS on January 2, 2018. Form 706 makes clear that title to the Arrowhead Home was held by Katja Holm, LLC, a California limited liability company wholly owned by Decedent at the time of her death. Following Decedent's death, the member interest in Katja Holm became an asset of the Estate

1   and is now subject to probate before the Probate Court.

2       50.     In order to generate liquidity needed to support the ongoing Singapore

3   and other litigation, Mr. Baker made the decision to sell the Arrowhead Home. The

4   sale closed and the entirety of the net sales proceeds were deposited into an account

5   the executor established at Citibank in the name of Katja Holm, LLC. The funds

6   deposited remain held in that account. A portion of those proceeds have since been

7   placed in a T-bill portfolio at Wells Fargo Bank, in the name of Katja Holm, LLC.

8       51.     The executor's listing of the Arrowhead Home for sale was open and

9   notorious, and was not in any way concealed from IRS, the Probate Court, or any

10  other person. The Arrowhead Home was registered on the Multiple Listing Service

11  ("MLS"), a public database in which property information is disseminated among

12  real estate professionals for listing and marketing purposes, and the sale was made

13  through escrow.

14      52.     The exercise of reasonable diligence by IRS would have readily

15  disclosed that the Arrowhead Home sale was not made as part of any "design" by

16  Plaintiff to place property beyond the reach of the Defendant. The offering of the

17  property and its sale were both made open and notoriously. No part of the sale was

18  opaque. Moreover, by selling the Arrowhead Home, the executor made estate

19  administration easier. He converted an illiquid asset into a liquid one, thus making

20  the asset more readily available to settle claims of the Estate's creditors, of which

21  there currently are currently none, and ultimate distributions to beneficiaries. The

22  Arrowhead Home sale did place any property beyond the reach of IRS. Sale of the

23  Arrowhead Home did not result in concealment or dissipation of any assets. Katja

24  Holm, LLC and, indirectly, the Estate had the exact same amount of assets before

25  and after the Arrowhead Home sale. The sale's only effect was to convert the nature

26  of asset owned by Katja Holm, LLC.

27  ///

28  ///

## CLAIMS FOR RELIEF

53.     Incorporated by reference are paragraphs 1 to 50 above as if fully stated herein.

54.     The Jeopardy Assessments and the Jeopardy Levy are illegal and invalid, as such assessments and levies are based upon legal and factual error, as well as upon erroneous assumptions of fact, including as to matters that IRS knew or, with the exercise of reasonable diligence, should have known. As such, both the Jeopardy Assessments and the Jeopardy Levy are unreasonable under IRC § 7429(b)(3).

55.     Defendant cannot meet its burden of proof set forth under IRC § 7429(g)(1) to establish the reasonableness of the Jeopardy Assessments and the Jeopardy Levy.

56.     The Jeopardy Assessments must be abated in their entirety, the Jeopardy Levy must be released, all further collection efforts of IRS must be enjoined, any frozen bank accounts or other property subject to lien or levy must be fully restored and returned to the Plaintiff, and the Plaintiff's normal pre-assessment and pre-collection due process rights must be reinstated.

57.     Because, *inter alia*, the position of the United States in this matter is not and has not been substantially justified, Plaintiff is entitled to recover their costs and a reasonable attorney's fee, pursuant to 28 U.S.C. § 2412 and IRC § 7430.

WHEREFORE, Plaintiff prays that this Court:

      (a) enter judgment in favor of the Plaintiff;

      (b) determine that both Jeopardy Assessments and the Jeopardy Levy made against Plaintiff were not reasonable under the circumstances;

      (c) order the Defendant to abate the Jeopardy Assessments in full;

      (d) order the United States to release the Jeopardy Levy and all other liens and levies currently in force against Plaintiff;

(e) reinstate the Plaintiff's statutory pre-assessment and pre-collection due process rights;

(f) order the Defendant to pay Plaintiff for the reasonable attorneys' fees and costs he incurred in connection with this case; and

(g) grant such other and further relief as the Court deems just and proper.

Dated:  December 9, 2022            WAYNE R. JOHNSON & ASSOCIATES, PLC


Wayne R. Johnson, Esq.
Attorneys for Plaintiff
Michael A. Baker, Executor of the
Estate of Chantal Burnison


Shuka Rassouli, Esq.
Attorneys for Plaintiff
Michael A. Baker, Executor of the
Estate of Chantal Burnison